P. R. T. Investment Corporation, a Corporation, Plaintiff-Appellant, v. Peter Ranft and Lydia L. Ranft, Defendants-Respondents, No. 43063—252 S. W. (2d) 315.

Division One, October 13, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, November 10, 1952.

*Erwin Tzinberg* and *Alfred W. Petchaft* for appellant.

*Scott & Kroening, William C. Scott* and *Robert W. Kroening* for respondents.

VAN OSDOL, C.—Action for specific performance of a contract providing for the sale of improvements, a two-story building

and equipment therein, on lots and parcels of land situate in Overland; to enforce a ninety-nine year lease on the ground; and for an accounting of the rents and profits received by defendants after August 1, 1950. The trial court found the issues in favor of defendants, denied the relief sought by plaintiff, and rendered judgment for plaintiff for $1000, the earnest money paid by plaintiff's assignor to defendants. Plaintiff has appealed.

This case treats with some of the requirements essential in invoking the equitable remedy of specific performance of contracts.

■ The equitable remedy of specific performance presupposes the existence of a valid contract between the parties to the action, or between those through whom they claim. The contract must be a concluded contract—there must have been a clear mutual understanding and a positive assent on both sides as to the material terms, and the contract must be sufficiently definite and certain to enable the court to decree its specific performance. A court cannot make a contract for the parties and then decree its performance. Rayburn v. Atkinson, Mo. Sup., 206 S. W. 2d 512; Baldwin v. Corcoran, 320 Mo. 813, 7 S. W. 2d 967; Terry v. Michalak, 319 Mo. 290, 3 S. W. 2d 701; Huff v. Shepard, 58 Mo. 242; Blake v. Shower, Mo. App., 207 S. W. 2d 775; Place v. Parker, Mo. App., 180 S. W. 2d 538; Creston Apartments Corp. v. Philip Gertler Electrical Contracting Co., 229 App. Div. 450, 242 N.Y.S. 396; Honeyman v. Marryatt, 6 H. L. Cases 112, 10 Reprint 1236; 58 C. J., Specific Performance, §§ 95-96, pp. 929-933.

In January 1950, one Jack Tzinberg, assignor of plaintiff, entered into negotiations for the purchase of the property involved herein. The negotiations were carried on with defendants, owners of the property, through the Henry H. Haffner Realty Company by Henry H. Haffner personally. As a result of these negotiations an "earnest money" contract was prepared in which contract it was provided that defendants agreed to sell and plaintiff's assignor agreed to purchase the improvements with all equipment therein belonging to the sellers, defendants, but not including the described ground; and the [317] sellers, defendants, additionally agreed to give the purchaser (plaintiff's assignor), his heirs or assigns, "a 99 year lease on the ground at a rental of $1000.00 per month - - - said purchaser, his heirs or assigns, are to have an option from the said seller(s), his heirs or assigns, to purchase the ground at the end of 20 years of said lease at a price of $10.000.00 cash." The total purchase price was $88,500 and it was provided that the sellers were to take and the purchaser agreed to give as a part of the consideration a $73,500 note, interest 1/4%, secured by a (first lien) deed of trust on the property. The note, including principal and interest, was to be amortized monthly over a period of fifteen years. The purchaser, plaintiff's assignor, paid $1000

"earnest money" and undertook to pay the balance, $14,000, in cash on the "closing date," July 1, 1950.

Tzinberg, plaintiff's assignor, signed the contract on the date thereof, January 26, 1950, and Haffner took the contract to the residence of defendants; but the defendant husband, Peter Ranft, stated that he wished the closing date changed from July 1st to August 1st, and he desired the use of one of the apartments in the building rent free until February 15, 1951. Haffner returned to the home of Tzinberg who agreed to the requests of Ranft. Tzinberg, however, also desired an additional change in the contract as originally drafted and inserted the additional clause, "Subject to purchaser accepting the seller's lease on ground." The parties, plaintiff's assignor and defendants, signed the contract as changed that same evening, January 26th. All drafts of leasehold agreements thereafter submitted to plaintiff by defendants were rejected by plaintiff.

The trial court upon defendants' objection refused plaintiff's proffer of the testimony of Tzinberg that he had inserted the clause merely because he wanted an opportunity to have the lease "checked" by an attorney "to see that it conformed with the terms of the sales contract." However, there was no objection interposed to Haffner's testimony that he had told defendants of Tzinberg's expressed explanation of his reason for inserting the clause. Haffner testified he had told defendants that Tzinberg wished his lawyer to "check" the lease "to be sure that it was complying with the terms of that contract." On the other hand, defendant Peter Ranft testified he had said, during the negotiations, that he would not sign the contract of sale "unless they put that (inserted clause) in."

The trial chancellor was of the opinion that the insertion of the clause, "Subject to purchaser accepting the seller's lease on ground," rendered the contract as originally prepared subject to further agreement between the parties as to the terms of the lease. "Either had a right to rely on the clause. It is evident that the defendants, at least, had in mind a negotiation over the terms of the lease and if the parties failed to agree, even though the failure was caused by the unreasonable demands of one or the other, nevertheless, the Court would be confronted with the duty of writing a lease for the parties in order to enter a decree of specific performance."

Plaintiff-appellant contends that the trial chancellor erred in finding that further negotiation relating to the terms of the lease was contemplated. Plaintiff-appellant contends the insertion of the stated clause did not make the sale contract incomplete or conditional; that, in determining the rights of the parties, greater weight should be given to their intention than to the particular words used; that the parties clearly understood the purpose of the clause; that parol evidence is admissible to explain the terms of a written instrument so long as

such evidence does not seek to modify or alter such terms. Defendants-respondents contend the trial court was correct in finding that the minds of the parties had not met on all of the material matters contemplated, and that the contract was therefore incomplete and unenforceable. Defendants-respondents say that, in determining ·the intent of the parties to a contract, the court should give the language used its plain and ordinary meaning; and that extrinsic parol evidence tending to show the intention of the parties should be neither admitted nor considered in showing an intention different to that plainly expressed.

Appellant asserts that the entire transaction as evidenced by the contract of January 26th was fundamentally a sale of the building and ground, the lease arrangement being actually an installment device proposed by defendants, sellers, in order to obtain some advantage "tax wise" if a portion of the purchase price were deferred and paid in "the form of annual payments on a ground lease over a period of twenty years." Consequently, appellant argues, all the material terms of the transaction were included in the contract of January 26th. But, having carefully examined the contract of January 26th, it seems clear to us that the sellers, defendants, by their contract of sale were selling the improvements on the ground, but were not undertaking to convey title to the land. A contract of lease was to be entered into as an integral part of the transactions provided in the contract of sale. It was only in the event, according to the contract of sale, that the purchaser should exercise the option to purchase at the end of twenty years of the term of the lease that the fee simple title to the land was to be affected by the contract of sale.

Attending now the clause, "Subject to purchaser accepting the seller's lease on ground"— no language could more clearly indicate that a further and additional contract (a contract of lease) was contemplated by the parties. The transactions stipulated in the contract of sale were plainly subject to or conditional upon the purchaser's "acceptance" of the sellers' lease. To allow this plain language to be verbally explained and varied as urged by appellant would vary or change the express terms of the written contract of sale which the parties had made as the evidence or the memorial of the terms of their agreement as of the time the contract of sale was entered into. Plaintiff-appellant has cited cases in which the language used on contracts was of doubtful meaning, or where the contracts were ambiguous in their terms. See, for example, Paisley v. Lucas, 346 Mo. 827, 143 S. W. 2d 262. In such cases it is true that extrinsic evidence may be received in aid of construction. The court will give such a contract such a construction as will be fair and reasonable between the parties. For the purpose of ascertaining the construction that is fair and reasonable the court will consider the relationship of the parties, the sub-

ject matter of the contract, the facts and circumstances attending the execution of the contract and its interpretation by the parties. Paisley v. Lucas, supra; Industrial Bank & Trust Co. v. Hesselberg, Mo. Sup., 195 S. W. 2d 470. In the instant case, the contract of lease must have been intended with the view of incorporating therein material terms yet to be agreed upon pertaining to the proposed leasehold estate which terms were not included in the contract of sale (compare Southern Real Estate & Finance Co. v. Park Drug Co., 344 Mo. 397, 126 S. W. 2d 1169) ; otherwise the clause would be meaningless.

Our case differs from the cases of Knisely v. Leathe, Mo. Sup., 178 S. W. 453, and School District of Kirksville v. Mississippi Valley Trust Co., Mo. App., 116 S. W. 2d 146, cited by plaintiff-appellant, which cases deal with contracts of sale in which the material terms of sales were stipulated but in which contracts it was provided that the purchasers' obligations to perform were conditioned upon the judgment of some third person, such as a purchaser's attorney, with respect to the title or marketability of the land or of the commodity to be sold. Such a condition does not protect the purchaser if the third person's judgment or decision is exercised arbitrarily, or capriciously or in bad faith.

Now, as stated, according to the plain language of the quoted clause of the contract of sale the contract was subject to the purchaser's acceptance of the sellers' lease. So, as stated, it must follow that the purchaser as well as the sellers contemplated an agreement as to the terms of a contract of lease in addition to the terms (relating to the duration of the leasehold and the rental) stated in the contract of sale. It is not too much to surmise that the purchaser and sellers as lessee and lessors had an interest in the way the improvements on the land were to be protected, not only by repairs but by insurance against fire and other hazards, even though the term of the leasehold estate as stated in the contract [319] of sale was the prolonged term of ninety-nine years. But a court could not certainly determine just what terms one or the other of the parties may have had in mind to be incorporated in or excluded from the contemplated contract of lease relating to these, or relating to other matters which might have been appropriately included in the contract of lease. The parties to the contract of sale have not agreed—there has been no meeting of the minds—upon the additional terms to be incorporated in the contract of lease which terms were essential in integrating the transactions provided in the contract of sale.

Since the parties had not come to a meeting of minds with respect to the terms of the lease, they never entered into a concluded contract complete and definite in terms which a court of equity may enforce by a decree of specific performance.

528

The judgment should be affirmed. It is so ordered. *Lozier* and *Coil,* *CC.,* concur.

PER CURIAM:—The foregoing opinion by Van Osdol, C., is adopted as the opinion of the court. All the judges concur.