R. R. KERRICK, Appellant,

v.

V. A. SCHOENBERG, C. E. Mosley, and M. F. Stroud, Respondents.

No. 47301.

Supreme Court of Missouri, Division No. 2.

Nov. 9, 1959.

Ziercher, Tzinberg, Human & Michenfelder, Herbert W. Ziercher, Clayton, for appellant.

Herman M. Katcher, William R. Gartenberg, Walter S. Berkman, St. Louis, for respondents.

SAMUEL A. DEW, Special Commissioner.

Plaintiff brought this suit in equity in two counts, both based upon his contract to purchase a tract of land. In Count I he sought specific performance, and also asked damages for defendants' failure to include in their warranty deed to the property purchased, two provisions of the contract affecting the tract purchased and defendants' adjoining land. In Count II he asked for an adjudication of the legal and equitable title to the real estate involved, prayed for specific performance of the contract, and for damages. Trial was had on the theory that defendants' pleading consisted of general denials. The court, disregarding the separation of the petition into counts, entered a decree more fully stated hereinafter in which the court found that the equitable title to the real estate is vested in defendant Mosley; that the legal title to the parcel sold and to the remaining land adjoining is vested, respectively, in defendants Schoenberg and Stroud, for the defendant Mosley as his agents or straw parties; that the plaintiff had tendered the full purchase price agreed upon, which the court ordered to be deposited with the registry of the court; ordered defendants to cause a general warranty deed to be executed and so deposited, conveying to the plaintiff the parcel purchased, and to include in said deed the two certain provisions of the contract in controversy as demanded by the plaintiff. The court further ruled that such two provisions, however, while valid personal obligations of the defendants, were not restrictive covenants that would run with the adjoining land of the defendants, nor were they charges upon said land. The court further denied the plaintiff's plea for damages. The decree also contained provisions touching the performance or nonperformance of the judgment. From the foregoing decree the plaintiff has appealed.

▮ The jurisdiction is vested in this court under the Constitution of Missouri, Art. V, Sec. 3, V.A.M.S., because the title to real estate is directly involved. Kauflin v. Turek, Mo., 277 S.W.2d 540, 542; Dowd v. Lake Sites, Inc., 365 Mo. 83, 276 S.W.2d 108; Drake v. Hicks, Mo., 249 S.W.2d 358, 360.

The pertinent facts are not disputed. In the fall of 1956, plaintiff, owner and operator of several gasoline filling stations in several midwestern states, selected a site for such a station about 300′ by 300′ fronting on Highway 67, a part of a tract of over 600 acres owned by defendant Mosley, lying on both sides of that highway, all in St. Charles County, Missouri. The site selected was much below the highway. It would require about 100,000 cubic yards of dirt to fill the site to the level of the highway. Plaintiff contacted defendant Mosley, to whom he explained his desire to purchase the site and the purpose for which he wished to use it, and discussed the necessity for filling the tract to the level of the highway. Thereafter a written contract was entered into by and between the plaintiff and defendant Schoenberg, who is conceded to hold the legal title to the property for the defendant Mosley as his agent or straw party.

The contract acknowledges receipt of $2,500 from the plaintiff as an earnest deposit on the total price of $25,000 cash, describes the property by location and measurement and by reference to a survey and, among other things, recites: "The grantor in this sale also includes sufficient dirt from adjoining land to make necessary fill on the above described 300' by 300'." It further provides that the deal depends upon plaintiff's ability to obtain a license necessary to erect a gasoline filling station. The terms require the balance of the $25,000 to be paid in cash upon the closing of the deal.

The contract also provides: "The seller agrees not to sell any of the present holdings of land in this area for other gasoline filling stations." There is no contention that this has reference to any other land than that of which the parcel sold was a part.

The contract called for a perfect title to be conveyed by a warranty deed "free from liens and encumbrances except as noted above," and except restrictions of record and a certain tax adjustment. Following other provisions, not here involved, the contract provided for forfeiture of the earnest money if the plaintiff failed to perform. The contract was prepared by an officer of the title company in which the deed was deposited by the defendant Schoenberg.

When the title was cleared of imperfections of record, defendants Schoenberg and Mosley notified plaintiff that a warranty deed to the tract purchased had been executed and deposited with the Guaranty Land Title Company at Clayton, Missouri, and was ready for delivery upon payment there of the balance of the purchase price. Plaintiff appeared the next day at the Guaranty Company's office and tendered the remaining sum of $22,500 of the agreed price. Upon examination of the warranty deed, however, plaintiff objected to it and refused to accept it because it wholly omitted the two provisions of the contract above quoted regarding the fill, and the agreement not to sell other sites in the adjoining property for other gasoline filling stations. The officer of the Guaranty Company had been instructed by defendant Mosley not to include those provisions in the deed. Plaintiff, as stated, refused to accept the deed without the inclusion of such provisions.

Plaintiff's attorney prepared and tendered a substitute contract containing the two provisions in question in greater detail as a charge and a burden on the defendants' remaining adjoining land as restrictive covenants running with that land. Defendants refused to enter into any agreement other than the one already made. They took the position that such provisions were mere personal obligations of the seller for which the existing contract was sufficient; and had no place in a warranty deed and could not be a charge on the remaining tract of over 600 acres.

On February 26, 1957, defendant Schoenberg deeded all of the land, other than the parcel sold to plaintiff, to defendant M. F. Stroud who, it is conceded, is a sister of defendant Mosley and holds the legal title as his agent or as a straw party.

The court's first decree gave to the plaintiff practically all of the relief prayed for, including the incorporation in the deed of the two provisions in controversy, and a ruling that they constituted a charge and an encumbrance on the remaining lands of the defendants and ran with the title thereto. Defendants filed their motion for a new trial and later withdrew the same when the court set aside its decree of its own motion and entered a new and final decree.

As indicated, the final decree finds that plaintiff had made due tender of the purchase price; that he had demanded a deed containing the two provisions mentioned, which defendant Schoenberg refused to execute and deliver; that defendant Schoenberg holds the legal title to the tract contracted to be sold, and holds the same for the defendant Mosley; that Schoenberg conveyed to defendant M. F. Stroud the legal title to all of the other property described in plaintiff's petition, who holds the same for the defendant Mosley.

The final decree further provides that the provision of the contract for dirt from adjoining land and the agreement not to sell any property in the area for purposes of another filling station are valid and personal agreements and obligations of the defendants, but are not restrictive covenants "which run forever with the other land owned by the defendants in this area", and constitute no burden, charge, encumbrance or restriction thereon in any way, on account of such personal obligations.

The final decree also ordered the defendants to cause to be executed a general warranty deed to the plaintiff for the land to be purchased, and to include in such deed the following two controverted provisions of the contract: "The sellers herein agree not to sell any of the present holdings of land in this area for other gasoline filling stations" and—"The grantor in this deed also includes sufficient dirt from adjoining land to make necessary fill on the above described 300 feet by 300 feet." The decree required the deed to be deposited by defendants in the registry of the court within ten days after the decree became final, such deed to be delivered to the plaintiff and the sum deposited to be paid to defendants; that if the plaintiff did not deposit the said sum as required, the deed to be returned to the defendants; that if defendants failed to so deposit such deed a certified copy of the decree filed for record in the office of the recorder of deeds should stand in the place and stead of a general warranty deed and the fee simple title shall thereupon be vested in the plaintiff. The court denied the damages prayed for in the petition. The costs were assessed against the defendants.

Plaintiff's motion for new trial or for modification of the decree was overruled and this appeal ensued.

Plaintiff does not pursue the issue of damages sued for and denied by the court. He first contends that the court erred in finding that the provision of the contract that the grantor "includes" sufficient dirt "from the adjoining land" to make necessary fill of the tract purchased is not a covenant running with the defendants' adjoining land, and in holding such provision is not a charge or an encumbrance thereon in any way. Plaintiff asserts that such provision is a covenant running with such adjoining land and is a charge thereon because it met all of the requirements of the law to make it so, to-wit: (1) It was established for the benefit of the ground defendants contracted to sell to the plaintiff; (2) It affected the nature and value of that parcel of land; (3) It affected the mode and enjoyment of the use of such tract purchased; (4) and is of benefit to such parcel. Plaintiff further maintains that the court misconstrued and misinterpreted such provision; that the court in so ruling made its own contract and decreed its specific performance, and that such findings are inconsistent and contradictory as to material matters contained in the decree.

There are certain principles of law especially applicable to this controversy which must be kept in mind. In an action for specific performance a court cannot make a contract for the parties and then decree its performance. Kauflin v. Turek, supra; P. R. T. Inv. Corp. v. Ranft, 363 Mo. 522, 252 S.W.2d 315, 316. The court may decree additional relief in order to do complete justice. State ex rel. Place v. Bland, 353 Mo. 639, 183 S.W.2d 878; 81 C.J.S. Specific Performance § 161, p. 762. A contract or a deed must be construed as nearly as may be by the intention of the parties, to be ascertained from within the four corners of the instrument, the surrounding circumstances and conditions. Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262. Consideration must be given to what the deed or contract actually says and not what the grantor intended secretly or without stating or what he might have said if he had decided to further explain his intention. Bay v. Stout Sign Co., Mo., 301 S.W.2d 786, 788. Restrictions on the free use of land are not favored by the law and are to be strictly construed. Missouri

Province Educational Institute v. Schlecht, 322 Mo. 621, 15 S.W.2d 770.

■ Looking first to the intention of the parties by their words in the contract that—"The grantor also includes sufficient dirt from adjoining land to make necessary fill on the above described 300' by 300'," certain facts appear plain and unmistakable. The premises to be sold fronted on the highway; the buyer's known purpose was to use them as a site for a roadside filling station. It was vital that the property be brought to the level of the highway. In the present state the site was so far below the level of the highway that it would take a great quantity of dirt, estimated by witnesses to be 100,000 cubic yards, to fill it to that level; the seller owned over 600 acres of adjoining land. For the purchase price of $25,000 in cash for a two-acre parcel of the land, the seller was willing and agreed to include in the sale the amount of dirt from his adjoining land necessary to make the fill on the tract sold. Obtaining so much soil elsewhere than from the seller's surrounding and adjoining land was obviously not contemplated by either party. Hence, it was evidently not the intention that the seller, by conveying his adjoining land to others, could deprive the buyer of the convenience and right to obtain the necessary soil from the seller's present adjacent property in whosesoever hands such land may be later vested, so long as such right be reasonably and seasonably exercised.

"A real covenant is one having for its object something annexed to, inherent in, or connected with, land or other real property —one which relates to, touches, or concerns, the land granted or demised and the occupation or enjoyment thereof. A covenant is viewed as real in nature, or one that runs with the land, when either the liability to perform the duties therein enumerated or the right to take advantage thereof passes to the vendee or other assignee of the land." 14 Am.Jur., p. 495, Sec. 19. "In the event the act to be per-

formed is merely collateral to the land and does not relate to the property demised, then the assignee is not charged, though named in the covenant." (Same authority, p. 497, Sec. 20.)

Did the defendants as part consideration for the $25,000 to be received, convey to the plaintiff, by the provision of the contract presently under consideration, a mere personal obligation of the defendants, subject only to suit for damages in the event of nonperformance, or did they thereby agree and intend to convey to the plaintiff something more, namely, an interest in the real estate to secure the plaintiff in the fulfillment of the provision in question? It has been said that—"As a general rule, in the absence of any statute or contract, whatever underlies or forms a part of the surface of the earth, or voluntarily grows thereon, or is permanently attached thereto and essential to the use or enjoyment thereof, will be held to constitute real estate." Thompson on Real Property, Vol. 1, p. 62, Sec. 57. For illustration, that authority cites sand and gravel, in their natural state, as real estate. Tiedeman on Real Property, (2d Ed.) p. 2, Sec. 2, says: "A grant of lands, therefore, without any qualification, conveys not only the soil but everything else which is attached to it, or which constitutes a part of it, the buildings, mines, trees, growing crops, etc. * * *. The general rule of law is that a permanent annexation to the soil of a thing, in itself personal, makes it a part of the realty." In Glencoe Sand & Gravel Co. v. Hudson Bros. Commission Co., 138 Mo. 439, 40 S.W. 93, 36 L.R.A. 804, 60 Am.St.Rep. 560, suit was brought to replevin deposits of sand and gravel in their natural state. This court said 40 S.W. at page 94: "Sand and gravel, while in its original bed, is as much a part of the realty as the earth itself. After it has been mined or separated from the land, it may become the subject of conversion; not before."

Section 442.010 RSMo 1949, V.A.M.S., is as follows: "The term 'real estate,' as used herein, shall be construed as coex-

tensive in meaning with lands, tenements and hereditaments, and as embracing all chattels real." Corporeal hereditaments are said to be confined to land. "Thus coal, stone, and other like materials constitute an essential part of the land itself and are corporeal hereditaments, as is standing timber, and a cave." 73 C.J.S. Property Sec. 7(b), p. 167.

From the above and other authorities of the law we hold that the provision of the contract for soil from defendants' adjoining land necessary for the fill on the tract sold is a covenant running with the title to the defendants' land described in plaintiff's petition as adjoining the parcel sold to him, and should be included in the deed as such. The fact that the claim of such a covenant is based on a contract and not on a deed does not affect the right to enforce it. Swain v. Maxwell, 355 Mo. 448, 196 S.W. 2d 780, 783(2); Cook v. Tide Water Associated Oil Co., Mo.App., 281 S.W.2d 415, 419.

■ Defendants urge the point that the provision to include the soil for the fill from the adjoining land omits the words: "his heirs and assigns," thus creating a liability upon the grantor only, as a personal obligation and not as a covenant running with the grantor's adjoining land. The agreement was not a mere promise to supply dirt, as defendants say in their brief, but is a sale of a great quantity of soil in its natural state to be removed by the plaintiff from the sellers' adjoining land, an element of convenience, certainty and security of obvious value. While the use of such terms as "heirs" or "assigns" may be noted when used, as some evidence of the intention of the parties, they are not necessary to create a covenant to run with the land. Section 442.460 RSMo 1949, V.A.M.S., provides that: "The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall

expressly appear, or be necessarily implied in the terms of the grant."

■■ A covenant running with the land does so without a declaration to that effect. 26 C.J.S. Deeds § 167(1), p. 1138; McLaughlin v. Neiger, Mo.App., 286 S.W.2d 380, 383. If, in a contract of sale of a tract of land, there is included the sale of a great quantity of soil from the seller's adjoining land to be used to fill the land sold to road level, and if the provision for the soil creates an interest in real estate and is subject to a suit for specific performance, then the presence of the word "heirs" or "assigns" or other words of inheritance would not be necessary in either the contract creating the interest or in the deed to which the buyer would be entitled.

As applied to the provision for the soil from defendants' adjoining land, plaintiff's contention is correct that the decree is inconsistent and contradictory in the requirement that such provision be incorporated in the deed when, in the same decree, it is ruled that such provision is in no way a charge, burden upon, or a covenant running with the adjoining land of the defendants. The heirs and assigns and others claiming interest in defendants' adjoining lands are thus advised of an agreement which the court rules in no way concerns them or their interest in such adjoining lands.

■ Defendants also argue that this provision is void as against public policy. However, they have furnished us no authorities and we find none which, in our opinion, would so characterize such provision as void as against public policy.

We conclude that the court erred in its holding that the provision of the contract by which defendants sold plaintiff sufficient dirt from defendants' adjoining lands to make necessary fill on the parcel of land purchased, was not a restrictive covenant running with the defendants' adjoining lands nor a burden or charge thereon in any way.

We turn our attention next to the point made by the plaintiff regarding the other provision of the contract in controversey, omitted in the proffered deed, ordered by the decree to be incorporated in it, but which the court, nevertheless, held was not a covenant running with the defendants' adjoining land, and no charge or burden upon it in any way. We refer to the agreement that—"The seller herein agrees not to sell any of the present holdings of land in this area for other gasoline filling stations." Plaintiff maintains that the court erred in ruling that such provision was not a charge upon defendants' adjoining land and not a covenant running with it, although the court did require it to be included in the deed. Plaintiff applies to that provision much of the same argument as directed to the provision for dirt to fill the tract purchased, but agrees that the chief question in regard to it is whether such agreement not to sell other sites in the remaining land for other filling stations is reasonable or is void as against public policy. He construes the provision to give him, his heirs and assigns, as owner or owners of the parcel purchased, consisting of about two acres, a right to prohibit the defendants, their heirs and assigns, indefinitely, from selling any part of such adjoining land, consisting of over 600 acres, for use as another filling station. If such restriction would serve the sole purpose of restricting competition in business it would violate public policy and become a restraint upon trade. Defendants take the firm stand that such an agreement cannot constitute a valid covenant to run with the defendants' adjoining land because it is void as in restraint of trade and against public policy.

This principle is fully considered by this court in Dean v. Monteil, 361 Mo. 1204, 239 S.W.2d 337, 339. In that case the owner of a tract was selling five acres of it to a development company for a certain business and residential project and the buyer obtained from the seller an agreement restricting the remaining thirty-five acres of her land to private residential purposes only.

The court found that the sole purpose of the restriction on the remaining thirty-five acres was to "protect the business interests of the development company." The claim was made that the restriction was a covenant running with the land and did not violate public policy. This court, in holding the restriction void, quoted with approval the following statement: "This class of contracts is always regarded with suspicion by the courts, as their effect usually is to create a monoply, and before any one of them will be upheld, it should clearly appear that no monopoly is created by it; that its enforcement will not prejudice the public; that it is reasonable as to time, space and person, not oppressive or injurious, and that the contract is founded on a good consideration, and that its enforcement will be useful and beneficial to the promisee."

We deem the provision in the contract under consideration, purporting indefinitely to restrict against any sale of any part of defendants' adjoining lands for use of any other filling station, to be void as in restraint of trade and as against public policy, and that it is not a covenant running with the adjoining land of the defendants, nor any charge or encumbrance thereon, and has no place in the contract or in the deed to which plaintiff is entitled.

The decree should be reversed and the cause remanded with directions to re-enter the same finding of facts, orders and judgment, except as modified to accord with the rulings herein made, and to include in such decree additional provisions in the following respects: (1) The court should fix and determine and provide in the decree a reasonable time within which the defendants shall designate on their adjoining land the place or places, practicable and convenient to the plaintiff, from which the plaintiff shall remove the soil purchased by him, and for notice thereof to the plaintiff; (2) The court should fix and determine and include in the decree a reasonable time after receiving such notice within which plaintiff shall remove the soil so designated; (c) The court should fix, determine and in-

clude in the decree a reasonable time within which the plaintiff, after receiving the soil, as agreed, shall execute and deliver to the defendants, an affidavit or other suitable instrument for record, acknowledging the full performance and satisfaction of the covenant in the deed to sell such soil. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the court.

All concur.